Filed 7/22/13  P. v. Nava CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B238947 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA092372) |
| v. | |
| JAVIER NAVA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Douglas Sortino, Judge.  Affirmed.

Thomas T. Ono, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Herbert S. Tetef, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted Javier Nava of first degree murder and found true special allegations he had personally used and intentionally discharged a firearm causing death. On appeal Nava contends the evidence was insufficient to support his conviction and the trial court erred in denying his request for a pinpoint jury instruction on third party culpability. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Information*

Nava was charged in an information filed June 16, 2011 with murder (Pen. Code, § 187, subd. (a)).[1] The information specially alleged Nava had personally used and intentionally discharged a firearm causing death (§§ 12022.53, subds. (b)-(d); 12022.5, subd. (a)). Nava pleaded not guilty and denied the special allegations.

2. *The Evidence at Trial*

In the early morning of June 29, 2010 the body of Nava's girlfriend, Carmen Placencia, was found wrapped in a plastic shower curtain on the shoulder of the Interstate 210 freeway. The body had been set on fire and was still burning when firefighters found it. Placencia had been shot in the face; a large exit wound was found at the back of her neck. The coroner testified the gunshot had severed her spinal cord and caused her immediate death. Forensic testing revealed gasoline had been applied to the body at the scene after she was killed. The caliber of firearm used in the shooting could not be determined.

Los Angeles County Sheriff's Department investigators searched Nava's home and his car, a Lincoln Navigator. They found a five-gallon gas can with only a minute quantity of gas inside, a plastic bag containing two black tennis shoes apparently belonging to Nava and a latex glove with six .357 caliber bullets inside it. DNA testing revealed Placencia's blood on one of the tennis shoes. A blood smear matching Placencia's DNA profile was also discovered on the rear seat of Nava's Navigator.

---

[1]     Statutory references are to the Penal Code.

Plastic grocery bags found in Nava's kitchen bore the same manufacturing lot number as the one found wrapped around Placencia's head at the time her body was discovered.

Sheriff's Department investigators found Placencia's cell phone with her blood smeared on it in a purse in her bedroom. Detectives also found tiny droplets of blood in Nava's house. DNA testing showed one blood sample found on the wall of Nava's home matched Placencia's DNA profile. Other blood samples found in Nava's home included combined DNA from Placencia and "probably" Nava; but statistically Nava could not be included or excluded with a high degree of certainty. The criminologist, Cristina Gonzales, also acknowledged one of those mixed samples included alleles that did not match either Placencia's or Nava's DNA. One explanation, she acknowledged, was that there was a contributor of DNA other than Nava or Placencia; however, another reasonable explanation, she testified, was that the alleles could be an artifact from the amplification process used to analyze the DNA and not, in fact, DNA at all.

Merced Morales, Nava's landlord, testified she had seen Nava's Navigator parked on the street in front of his home the morning of June 28, 2010. She did not see Placencia's car, a Toyota 4Runner. When she returned home in the afternoon, she saw both the Navigator and the 4Runner parked on the street. Around 5:00 p.m. Nava asked Morales if he could park his truck in the back of the driveway, an unusual request Morales thought because he had never parked there before. Nava told her he was going to sell some things and move out. Morales saw Placencia with Nava at 6:00 p.m. that evening. The next morning Morales saw the Navigator parked in the driveway but the 4Runner was gone. Later that day, Morales saw Nava washing the inside of his Navigator.

Nava worked as a security guard, but was not licensed to carry a gun and did not use one for his job. Sometime in June 2010, while Placencia was still alive, Nava had asked another security guard where he could buy a cheap gun.

Nava did not testify. His theory at trial was that he had touched Placencia's body after she had been killed, as evidenced by the blood belonging to Placencia found on the top of his right tennis shoe, but he did not kill her. He also argued there was no motive,

3

no evidence he was the perpetrator, no evidence of express or implied malice and no evidence of premeditation or deliberation.

3. *The Verdict and Sentence*

The jury convicted Nava of willful, deliberate and premeditated murder (§ 189) and found true the special allegations he had personally used and intentionally discharged a firearm resulting in death. Nava was sentenced to an aggregate state prison term of 50 years to life, 25 years to life for first degree murder, plus 25 years to life for the intentional discharge of a firearm causing death (§ 12022.53, subd. (d)).[2]

## DISCUSSION

1. *Substantial Evidence Supports the Jury's Verdict*

Nava contends there was insufficient evidence he killed Placencia, acted with premeditation and deliberation or intentionally discharged a firearm.[3] None of these contentions has merit.

---

[2] Sentence on the remaining firearm enhancements found true by the jury was imposed and stayed. (See § 12022.53, subd. (f); *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1129-1130.)

[3] When considering challenges to the sufficiency of the evidence, we "review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

4

a. *Nava as perpetrator*

The evidence at trial showed Placencia's blood was found on Nava's shoe, his car and in his home; Placencia's body was burned with gasoline and a nearly empty gas can was found in Nava's car; bullets were also found in his car as was a latex glove, the latter providing some explanation for why Nava's fingerprints were not found on items wrapped around Placencia's body or left at the scene. Placencia was last seen with Nava the night she was killed; and no evidence or explanation was offered for the presence of her blood on Nava's shoe, in his home or in his car. This evidence, albeit largely circumstantial, was more than sufficient to support the jury's finding Nava was the perpetrator. (See *People v. Kraft* (2000) 23 Cal.4th 978, 1053-1054 ["Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.] '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment"'"]; *People v. Tully* (2012) 54 Cal.4th 952, 1006 [same].)

b. *Premeditation and deliberation*

Any murder that is "willful, deliberate, and premeditated" is murder of the first degree. (§ 189.) "A verdict of deliberate and premeditated first degree murder requires more than a showing of intent to kill. [Citation.] 'Deliberation' refers to careful weighing of considerations in forming a course of action; 'premeditation' means thought over in advance. [Citations.] 'The process of premeditation and deliberation does not require any extended period of time. "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly. . . .""" (*People v. Koontz* (2002) 27 Cal.4th 1041, 1080.)

In *People v. Anderson* (1968) 70 Cal.2d 15, the Supreme Court identified three categories of evidence relevant to deciding the issue of premeditation and deliberation:

5

(1) planning activity, (2) motive, and (3) manner of killing. (*Id.* at pp. 26-27; accord, *People v. Steele* (2002) 27 Cal.4th 1230, 1249.) The list was not intended to be exhaustive or require the identified factors to appear in any specific combination or be afforded any particular weight. (*People v. Pride* (1992) 3 Cal.4th 195, 247; *People v. Perez* (1992) 2 Cal.4th 1117, 1125.) The *Anderson* factors are "descriptive," rather than "normative," and are not a "sine qua non" to finding first degree premeditated murder. (*People v. Memro* (1995) 11 Cal.4th 786, 863-864; accord, *People v. Bolin* (1998) 18 Cal.4th 297, 331; see *Steele*, at p. 1249 [*Anderson* factors are simply "intended to guide an appellate court's assessment whether the evidence supports an inference that the killing occurred as the result of preexisting reflection rather than unconsidered or rash impulse"].)

Contrary to Nava's contention, there was ample circumstantial evidence of planning to support the jury's finding of first degree premeditated murder. (*People v. Anderson, supra,* 70 Cal.2d at p. 25 [premeditation often established by circumstantial evidence].) In the weeks just prior to the killing, Nava, who was not licensed to carry a gun for his job as a security guard, inquired where he could obtain one. Hours before Placencia was killed, Nava requested to park his Navigator in the driveway, rather than on the street where he had always parked it. The jury could reasonably infer the aberrant arrangement was made in anticipation of transporting Placencia's body after Nava killed her. There was also evidence from which the jury could reasonably infer Nava had used gloves during the crime to prevent the discovery of his identity, supporting a finding the murder was planned rather than the result of an unconsidered or rash impulse. In addition, Placencia was killed by a single gunshot to the face; there was no evidence of a struggle or provocation. This, too, supported an inference of premeditation. (See *People v. Marks* (2003) 31 Cal.4th 197, 230 [a close-range shooting to the head or face without evidence of struggle or provocation supported premeditation finding].)

c. *Personal use and intentional discharge of firearm*

For the same reason, we reject Nava's contention the evidence was insufficient to support the jury's finding he personally used and intentionally discharged a firearm

6

causing death. The same evidence supporting a finding Nava killed Placencia was also sufficient to support the jury's finding he personally used and intentionally discharged the firearm causing Placencia's death.

2. *The Trial Court Properly Denied Nava's Request for a Pinpoint Instruction on Third Party Culpability*

Based on the criminologist's testimony at trial that data in a raw DNA analysis of blood on the rug in Nava's house could be interpreted to suggest a third party was involved in the homicide, Nava requested a pinpoint jury instruction to highlight his third-party-culpability theory: "[T]he defendant has introduced evidence to show that some other persons committed the charged offenses. The prosecution has the burden of establishing beyond a reasonable doubt that it was the defendant who committed the charged offense. If, after considering all of the evidence, you have a reasonable doubt that the defendant was the person who committed the charged offense, you must find the defendant not guilty." The trial court denied the request, explaining that, while Nava was certainly free to argue the theory of third party culpability, the instruction itself was unnecessary, as it was duplicative of other instructions. The trial court's ruling was proper.

The instruction Nava requested simply told the jury the prosecution had to prove beyond a reasonable doubt that he, rather than someone else, was the perpetrator of the crime. That instruction, as the trial court properly recognized, was fully covered by the reasonable doubt instructions in CALCRIM Nos. 220 and 521 given to the jury.[4]

---

[4] The jury was instructed with CALCRIM No. 220: "The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial. [¶] A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I specifically tell you otherwise. [¶] Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. [¶] In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider

7

Accordingly, the denial of Nava's proposed pinpoint instruction was not error. (See *People v. Panah* (2005) 35 Cal.4th 395, 486 ["[a] trial court is not required to give pinpoint instructions that merely duplicate other instructions"]; *People v. Bolden* (2002) 29 Cal.4th 515, 558-559 ["instruction that does no more than affirm that the prosecution must prove a particular element of a charged offense beyond a reasonable doubt merely duplicates the standard instructions defining the charged offense and explaining the prosecution's burden to prove guilt beyond a reasonable doubt"]; *People v. Hartsch* (2010) 49 Cal.4th 472, 504 ["[w]e have noted that similar instructions [on third party liability] add little to the standard instruction on reasonable doubt"].)

Moreover, even if failure to give the requested instruction was error, it was plainly harmless in light of the reasonable doubt instructions given. (*People v. Hartsch, supra,* 49 Cal.4th at p. 500 ["[w]e have also held that even if such instructions properly pinpoint the theory of third party liability, their omission is not prejudicial because the reasonable doubt instructions give defendants ample opportunity to impress upon the jury that evidence of another party's liability must be considered in weighing whether the prosecution has met its burden of proof"]; *People v. Ledesma* (2006) 39 Cal.4th 641, 720-721 [same].)

---

all the evidence that was received throughout the entire trial.  Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty."

The jury was also instructed with CALCRIM No. 521, which provides in part, "The People have the burden of proving beyond a reasonable doubt that the killing was first degree murder rather than a lesser crime."

## DISPOSITION

The judgment is affirmed.

PERLUSS, P. J.

We concur:

ZELON, J.

SEGAL, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.